94 F.3d 645
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronald L. VOYTKO, Plaintiff-Appellant,
v.
CONSOLIDATED RAIL CORPORATION, Defendant-Appellee.
 No. 94-4240.
 United States Court of Appeals, Sixth Circuit.
 Aug. 8, 1996.
 
 Before: MERRITT, Chief Circuit Judge; BOGGS, Circuit Judge, O'MEARA, District Judge*.
 MERRITT, Chief Judge.
 
 
 1
 Plaintiff Ronald L. Voytko appeals the District Court grant of summary judgment for Defendant employer, Conrail, in an action under the Federal Employers' Liability Act, 45 U.S.C. § 51-60, which provides a federal remedy for injured rail workers. Plaintiff also alleges that the district court erred in failing to consider his claims for negligent assignment and for violations of the Hours of Service Act, 45 U.S.C. § 62.
 
 
 2
 The District Court granted summary judgment on the ground that the statute of limitations period of three years had already run by the time the Plaintiff filed his action for both emotional and physical injuries in 1993. We agree with the District Court that the claim for the emotional injuries would be barred, but we affirm as to the physical injuries on alternative grounds. There is no genuine issue of material fact as to the physical injuries that enables the Plaintiff to survive Defendant's summary judgment motion. The District Court's grant of summary judgment on Plaintiff's claims of negligent assignment and violations of the Hours of Service Act is also affirmed.
 
 FACTS
 
 3
 Plaintiff, Mr. Voytko, repaired rail lines and performed other labor for Conrail from May 7, 1974 until May 21, 1991. He alleges that he worked under almost perpetual hazardous conditions. For example: he endured attacks from local residents on his track gang; hung from the edge of a bridge when a train passed overhead; worked in a thunderstorm and witnessed the electrocution of another worker and slept in a camp car with intoxicated, harassing co-workers. These incidents, among others, caused Mr. Voytko to have a nervous breakdown for which he was treated at the Northwestern Institute. During his deposition, plaintiff testified:
 
 
 4
 Q. Well, didn't you talk a little bit ago about some treatment you had at Northwestern Institute?
 
 
 5
 A. Yeah.
 
 
 6
 Q. Well, that was back in '88, wasn't it?
 
 
 7
 A. Uh-huh.
 
 
 8
 Q. That was for a depression.
 
 
 9
 Is there any condition that you have ever been treated for, besides depression, a psychological condition?
 
 
 10
 A. No.
 
 
 11
 Q. What brought on the depression that you had in 1988?
 
 
 12
 A. Working conditions.
 
 
 13
 The plaintiff claims that he is no longer able to work in any capacity, and left his job in May, 1991, apparently due to a diagnosis of congestive heart failure, syncope, paralysis, and a hiatal hernia, in addition to his emotional problems. The evidence in the record as to his heart problems is scant, and the only "diagnosis" consists of Mr. Voytko stating at his deposition that "they told me that my heart was pumping too fast" and that "[i]t wasn't getting enough oxygen to the brain." There is no medical testimony that his heart condition was related to his working conditions, nor is there a diagnosis by a physician that is part of the record in this case. Plaintiff does allege his physical injuries in his brief:
 
 
 14
 The treating medical physicians relate his medical conditions to the continuous unsafe work conditions that Mr. Voytko experienced on the railroad, as well as to the unsafe and unhealthy conditions experienced in the camp cars.
 
 ANALYSIS
 
 15
 Actions under FELA, to be timely, must be brought within "three years from the day the cause of action accrued," 45 U.S.C. § 56, applying the so-called "discovery rule," Urie v. Thompson, 337 U.S. 163 (1949); United States v. Kubrick, 444 U.S. 111 (1979).
 
 
 16
 Under this rule, discovery is shown when it is clear "from [claimant's] actions that he possessed sufficient information that he knew, or should have known, that he had been injured by his work with the railroad," Townley v. Norfolk & W. Ry. Co., 887 F.2d 498 (4th Cir.1989); or "when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause." Fries v. Chicago & Northwestern Transp. Co., 909 F.2d 1092 (7th Cir.1990).
 
 
 17
 In this case, the plaintiff had a nervous breakdown in 1988. Since he did not acquire his injuries because of a specific physical injury, his injury of emotional distress must be analyzed under the discovery rule. Since under the discovery rule, a plaintiff's cause of action accrues when he has reason to know that he has been injured and that the injury is work related, plaintiff's claim for emotional distress accrued in April of 1988. Even if "the plaintiff later discovers that his injuries are more serious than he originally thought, his cause of action nevertheless accrues on the earlier date, the date he realized he has sustained harm from the tortious act." Hicks v. Hines, Inc., 826 F.2d 1543, 1546 (6th Cir.1987). Therefore the District Court's grant of summary judgment to Defendant Conrail as to the Plaintiff's emotional injuries is affirmed as outside the statute of limitations period under the Act.
 
 
 18
 * * *
 
 
 19
 As to the physical injuries, the Plaintiff did not allege specific facts which would tend to prove that he had a heart condition related to his work conditions. The only evidence which is part of the record appears in the deposition of the Plaintiff.
 
 
 20
 Q. What type of heart problems are you saying your work caused?
 
 
 21
 A. Being under stress all the time, pressure.
 
 
 22
 Q. Are you referring to the congestive heart failure as being caused by the railroad?
 
 
 23
 A. Yeah.
 
 
 24
 Q. Did you have congestive heart failure before June 21st of 1991?
 
 
 25
 A. No.
 
 
 26
 Q. That's the first time you ever had it?
 
 
 27
 A. Yeah.
 
 
 28
 Q. Has any doctor attributed it to the railroad, either to say it was related or was not?
 
 
 29
 A. It's related.
 
 
 30
 Q. Did a doctor tell you that?
 
 
 31
 A. Uh-huh.
 
 
 32
 Q. What doctor told you that?
 
 
 33
 A. Dr. Orndoff.
 
 
 34
 This testimony by the Plaintiff is insufficient evidence to overcome the Defendant's summary judgment motion. At summary judgment, a Plaintiff must do more than merely repeat the allegations which appear in his complaint. The summary judgment "standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-8 (1986). "[T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). This is not the case here. Therefore, the District Court grant of summary judgment for the Defendant as to the plaintiff's physical injury is affirmed on the alternative ground that there is no genuine issue of material fact at issue.
 
 
 35
 The District Court considered Mr. Voytko's claim that Conrail negligently assigned him to work he could not perform: "[t]he defendant cannot be negligent in assigning plaintiff work that he could not handle if it had no knowledge of his problems," and that the plaintiff "admitted that between 1988 [the time of his nervous breakdown] and 1991 [the time that he left his job permanently] he never told anybody at the railroad that he could not handle his job."
 
 
 36
 The plaintiff has not proffered any evidence which would tend to show that the railroad knew of his unfitness for the work they were assigning him. A railroad has no duty to ascertain whether an employee is physically fit for his job. Fulk v. Illinois Cent. R. Co., 22 F.3d 120 (7th Cir.1994). In fact, the plaintiff admits that he never made any complaints that he was not capable of performing his job.
 
 
 37
 Q. I take it then there was never a time that you went to the railroad from, say, '88 to '91 and said this job is more than I can handle, physically?
 
 
 38
 A. No.
 
 
 39
 * * *
 
 
 40
 * * *
 
 
 41
 Q. I am asking, is there any time where you went to anybody at the railroad between '88 and '91 and said physically I can't handle my job?
 
 
 42
 A. I am not really sure.
 
 
 43
 Q. You don't remember any such time, I take it?
 
 
 44
 A. No.
 
 
 45
 Q. No, you don't remember any such time?
 
 
 46
 A. No.
 
 
 47
 The plaintiff asserts that because Conrail paid his medical bills through its insurance carrier for his mental breakdown in 1988 they were on notice that he had a pre-existing medical condition. There is no supporting documentation in the record that tends to show that Conrail had any knowledge of Mr. Voytko's condition. The evidence that plaintiff does offer goes to his claim under the Act for his emotional distress which accrued in 1988, and is time-barred.
 
 
 48
 Finally, the Plaintiff argues that the District Court erred in not considering his claim under the Hours of Service Act, which provides that common carriers must provide clean, safe and sanitary sleeping quarters for employees. Conrail argues that there is no private right of action under the Hours of Service Act, and that all actions for statutory violations of the Act must be brought by the United States Attorney. United Transp. Union v. Lewis, 699 F.2d 1109 (11th Cir.1983).
 
 
 49
 The plaintiff argues that actions for violation of the Safety Appliance Act, 45 U.S.C. § 22, or for violation of the Boiler Inspection Act, 45 U.S.C. § 1, are prosecuted as actions under the Federal Employers' Liability Act. Green v. River Terminal Ry. Co., 763 F.2d 805, 810 (6th Cir.1985). Since violations of these acts are prosecuted as actions under the F.E.L.A., so too should violations of the Hours of Service Act since all three acts are meant to promote the safety of railroad employees and the public at large. Even if violations of the Hours of Service Act can be prosecuted by a private plaintiff under the F.E.L.A., Mr. Voytko's claims for these violations accrued in 1988 when he had his nervous breakdown and attributed the breakdown to working conditions. Since the Plaintiff's claim for emotional distress under the Act is time-barred and his claim for physical injury is without factual support, he was not entitled to have the District Court address the substantive merits of his negligence claim.
 
 CONCLUSION
 
 50
 For the reasons discussed above, the District Court grant of summary judgment to Defendant Conrail is AFFIRMED.
 
 
 
 *
 The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation