**BP PRODUCTS NORTH AMERICA, INC., Plaintiff,**

v.

**Hanni George YOUSSEF, and Kerolos, Inc., Defendants.**

**No. 8:01–CV–2414–T–23TGW.**

United States District Court, M.D. Florida. Tampa Division.

Jan. 7, 2004.

---

Moises Melendez, Cristina M. Pierson, Lynn Diane Carrillo, Mark Blumstein, Gordon, Hargrove & James, P.A., Ft. Lauderdale, FL, for plaintiff, counter-defendant.

Luis S. Konski, Lilliana Farinas Sabogal, Becker & Poliakoff, Miami, FL, for defendants, counter-claimants.

Brian D. Elias, Fowler White Burnett, P.A., Ronald E. Kaufman, Haley, Sinagra, Paul & Toland, Miami, FL, John Bradford Kent, Jacksonville, FL, for garnishees.

### ORDER

MERRYDAY, District Judge.

In this action, BP Products North America ("BP") successfully sued to collect on a promissory note (the "Note"). Accordingly, the Court entered a judgment in favor of BP and against the defendants (collectively "Youssef") in the amount of $337,607.98 (representing principal of $250,000 plus $87,607.98 in accrued interest) (Doc. 130). BP now moves for an award of judgment interest and argues for the application of the default interest rate contained in the Note rather than the federal statutory rate set forth in 28 U.S.C. § 1961(a) ("Section 1961") (Doc. 170).[1]

---

1. Section 1961 provides:

    Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment.

    Without question, Section 1961 entitles BP to an award of judgment interest at the specific rate of 1.10% per annum. *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); *G.M. Brod & Co. v. U.S.*

Youssef opposes the motion and argues for application of the mandatory statutory rate under Section 1961, rather than the default rate in the Note.[2]

In support of its motion, BP cites authority that favors application of the Note rate rather than the statutory rate.[3] *See Central States, Southeast and Southwest Areas Pension Fund v. Bomar Nat'l, Inc.,* 253 F.3d 1011, 1020 (7th Cir.2001); *Carolina Pizza Huts, Inc. v. Woodward,* 1995 WL 572902, at *3 (4th Cir. Sept.29, 1995) (unpublished opinion); *Hymel v. UNC, Inc.,* 994 F.2d 260, 266 (5th Cir.1993); *In re Lift & Equip. Serv., Inc.,* 816 F.2d 1013, 1018 (5th Cir.1987); *but see Wilmington Trust Co. v. Aerovias de Mexico, S.A. de C.V.,* 893 F.Supp. 215, 220 (S.D.N.Y.1995) (the district court awarded judgment interest at the Section 1961 rate despite a contractual agreement providing for a higher rate). However, each cited case originates from and relies upon *Investment Service Co. v. Allied Equities Corp.,* 519 F.2d 508, 511 (9th Cir.1975), in which a creditor successfully sued a guarantor on a promissory note, and the district court awarded interest at the contractual rate of ten percent rather than at the statutory rate. The guarantor appealed and argued that the creditor was entitled only to the "legal rate of interest" in Oregon, i.e., six percent. Citing the relevant Oregon statute, which provided that "[judgments and decrees] bearing more than six percent interest and not exceeding the maximum rate, bear the same rate of interest as borne by such contracts," the Ninth Circuit affirmed the district court's application of the contractual rate. *Investment Service,* 519 F.2d at 511–512.

*Investment Service* relied on the Oregon statute because, prior to October 1, 1982, Section 1961 explicitly provided for judgment interest at "the rate allowed by state law." However, in 1982 Congress amended Section 1961 to provide for judgment interest at the Treasury bill rate. The United States Supreme Court has commented on the legislative intent underlying the 1982 amendment to Section 1961:

In the brief legislative history available, there is a single stated purpose for Congress' alteration of the interest rate from the state rate to the Treasury bill rate. Under the prior version of § 1961,

*Home Corp.,* 759 F.2d 1526, 1542 (11th Cir. 1985) ("No exemption [to 28 U.S.C. § 1961] is made for actions based on diversity of citizenship."); *Drovers Bank of Chicago v. National Bank and Trust Co. of Chariton,* 829 F.2d 20, 23 (8th Cir.1987) ("post-judgment interest must be awarded on the entire amount of a judgment for money damages."). However, the Note permits BP to recover "interest on any judgment ... at a rate which shall be at the lesser of (i) eighteen (18%) percent per annum, or (ii) the highest rate permitted by law." Thus, BP argues for the application of the contractual interest rate of 18% per annum rather than the statutory judgment interest rate of 1.10% per annum.

**2.** Youssef also argues that BP's motion should be construed as a motion to amend the judgment pursuant to Rule 59(e), Federal Rules of Civil Procedure (Doc. 177), and denied as untimely pursuant to Rule 59(e)'s provision that "any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." However, BP need not move to amend the judgment to receive an award of judgment interest. *See Bell, Boyd & Lloyd v. Tapy,* 896 F.2d 1101, 1104 (7th Cir.1990) ("[Section 1961] entitles the prevailing plaintiff in a federal suit (including a diversity suit) to postjudgment interest at a rate fixed in the statute, whether or not there is an award of interest in the judgment or even a request for interest in the complaint.") (citations omitted). Thus, Youssef's Rule 59(e) argument fails.

**3.** Neither party cited pertinent precedent from the Eleventh Circuit.

"a losing defendant may have an economic incentive to appeal a judgment solely in order to retain his money and accumulate interest on it at the commercial rate during the pendency of the appeal." Because the prevailing state-set rates were significantly lower than market rates, losing parties found it economical to pursue frivolous appeals.

*Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 839, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). Thus, abuse under the prior version of Section 1961 resulted in Congress' purposeful abolition of Section 1961's deference to state law regarding the judgment interest rate.

*Investment Service* fails to mention Section 1961 and instead states, "Since both parties have stipulated that Oregon law shall apply, this court is bound to follow the Oregon [statute]." Nevertheless, because Section 1961 at the time relied on state law, *Investment Service* correctly applied the law as it existed in 1975. However, with respect to judgments entered after the 1982 amendment to Section 1961, in which Congress purposefully eliminated Section 1961's reliance on state law in favor of a uniform, federal judgment interest rate, *Investment Service* provides no support for an award of judgment interest at a rate other than the mandatory Treasury bill rate.

Decided in 1987 (five years after the statutory amendment abolishing Section 1961's deference to state law regarding judgment interest), *In re Lift* relied exclusively on *Investment Service* and two Louisiana state court decisions that rely on Louisiana law and awarded judgment interest at the contractual rate of ten percent rather than at the Treasury bill rate

required by Section 1961. *See* 519 F.2d at 511–12. *In re Lift* states that "[w]hile 28 U.S.C. § 1961 provides a standard rate of judgment interest, the parties are free to stipulate a different rate, consistent with state usury and other applicable laws." 816 F.2d at 1018. Perhaps failing to notice *In re Lift's* reliance on the outdated decision in *Investment Service,* other courts, providing little or no accompanying analysis, have followed suit and affirmed awards of judgment interest at a contractual rate. *See, e.g., Carolina Pizza Huts,* 1995 WL 572902, at *3; *Hymel,* 994 F.2d at 265–66. As a result, the questionable holding in *In re Lift* has advanced by force of repetition.

However, in *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.,* 244 F.Supp.2d 1250, 1272–76 (D.Kan.2003), Chief Judge Lungstrum recognized the puzzling nature of *In re Lift* and its progeny:

> The Court concedes at the outset that the cases relied upon by plaintiffs, to the extent those cases purport to stand for a well-recognized rule that parties are free to contract for an interest rate other than the rate established in section 1961(a), are problematic in certain respects. In large part, the cases offer little analysis as to why parties would be able to contract around the seemingly mandatory language of section 1961(a).

I join Judge Lungstrum in doubting the continuing vitality of this line of authority, which apparently grants to contractual interest the same dignity as statutory interest.

*In re Lift* is probably correct in stating that parties can agree to a contractual rate of interest in place of the standard statutory rate in the event of a judgment—presumably, parties can agree to almost any-

thing.[4] Much more problematic, however, is the notion implicit in *In re Lift* that the entry of judgment triggers an automatic substitution of the contractual rate for the standard statutory rate, even if the prevailing party failed to sue for the contractual rate.

■■■ The confusion results from *In re Lift's* (perhaps inadvertent) failure to distinguish between important attributes of the right created by Section 1961 and a right created by contract. Judgment interest is purely a statutory construct. *See Pierce v. United States*, 255 U.S. 398, 406, 41 S.Ct. 365, 65 L.Ed. 697 (1921) ("At common law judgments do not bear interest; interest rests solely upon statutory provision."). By force of Section 1961, a judgment bears interest at the statutory rate, even without a demand by the plaintiff or an order of the court. *See Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1104 (7th Cir.1990). Unlike the statutory right enjoyed by prevailing parties under Section 1961, a contractual right is enforced in court by a suit, including a demand for any special form of relief. *See* Fed.R.Civ.P. 8(a). Therefore, a prevailing party may not move post-trial for contractual relief that the party failed to demand in pleadings prior to trial. *See Horizon Holdings*, 244 F.Supp.2d 1250, 1275–77 (D.Kan.2003).[5] Here, BP seeks to enforce a specific provision in the Note. That is, BP seeks not an award of statutory judgment interest (as BP contends) but an award of contractual interest measured from the time of judgment. However, BP possesses no present entitlement to contractual relief for which it has never sued. *Horizon Holdings*, 244 F.Supp.2d at 1275–77.

In *Horizon Holdings*, the plaintiff apparently failed to claim the contractual interest rate (which exceeded the statutory rate) in either the pleadings or the pretrial stipulation and order. Accordingly, Judge Lungstrum awarded the plaintiff judgment interest at the statutory rate:

> The Court concludes that defendants were entitled to notice from plaintiffs—prior to trial and, hopefully, at least by the date of entry of the final pretrial order—that plaintiffs intended to seek postjudgment interest at the contractual rate. Such notice would have enabled defendants to ascertain whether they had any good faith factual arguments to raise ... that could have been presented to the [factfinder]. Moreover, such notice would have permitted defendants to assess fully the risk of bringing this case to trial. More specifically, defendants would have been able to ascertain the total potential exposure that they might face [in the event of an unfavorable outcome at trial].

244 F.Supp.2d at 1276–77.

Because BP, like the plaintiff in *Horizon Holdings*, failed in both the pleadings and the pretrial stipulation and order to notify Youssef of its intent to seek interest at the contractual rate, Youssef enjoyed no op-

---

**4.** For instance, in the Note at issue in this action, BP and Youssef apparently agreed that in the event of a default and the resultant entry of a judgment against Youssef, BP would be entitled to interest on the judgment at a rate of 18%. No legal barrier prevents the parties from entering or enforcing such an agreement.

**5.** *In re Lift* and its progeny (*Hymel, Carolina Pizza Huts,* and *Central States*) fail to note whether the prevailing party included its claim for interest at the contractual rate rather than the statutory rate in the pleadings or the pretrial stipulation and order.

portunity, at trial or otherwise, to assert legal or factual defenses. BP's failure to raise the claim prior to trial prevented Youssef from asserting and attempting to prove, for example, that the provision was modified by a subsequent agreement, that the provision was usurious or against public policy, or that another legal or factual defense applied. Yet, if the Court awards the contractual rate rather than the statutory rate, Youssef incurs an additional $57,055.75 per year in interest above the statutory rate. Neither the pertinent authority nor the particular circumstances of this action sanction this harsh result.

Accordingly, BP's motion for determination and application of judgment interest (Doc. 170) is **GRANTED,** and Youssef shall pay BP judgment interest at the statutory rate of 1.10% per annum.